UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| THE ESTATE OF JOSE FRANCISCO VASQUEZ-ORTIZ, § § § | |
| Plaintiff, § § | |
| v. § | CIVIL ACTION NO. H-11-2413 |
| § | |
| ZURICH COMPANIA DE SUGUROS, S.A., § § § | |
| Defendant. § | |

## MEMORANDUM AND ORDER

Pending before the Court is Defendant Zurich Compania De Seguros, S.A.'s ("Zurich") Motion for Summary Judgment (Doc. No. 35) and Motion for Determination of Law Pursuant to Rule 44.1 (Doc. No. 36). After considering the motions, all responses thereto, and the applicable law, the Court finds that Defendant's Motion for Summary Judgment should be **GRANTED** and Defendant's Motion for Determination of Law should be **TERMINATED AS MOOT**.

### I. BACKGROUND

This lawsuit arises from an airplane crash in Hidalgo, Texas on May 2, 2007. (Doc. No. 44-4, June 14, 2007 letter, at 1.) The Estate of Jose Francisco Vasquez-Ortiz ("the Estate") now brings this suit, seeking, among other things, a declaratory judgment that an insurance policy issued by Zurich provides liability coverage for the death of passengers and crewmembers. (Doc. No. 7, Am. Compl. ¶ 20.)

Zurich had previously issued two insurance policies to Cite Aviation LLC ("Cite Aviation"), the registered owner of the Lancair aircraft that crashed on May 2, 2007. (Mot. for

1

Summ. J., at 3.)[1]  Cite Aviation is a Delaware limited liability company set up and owned entirely by Byron Hoffman.  (Doc. No. 45-3, Hoffman Dep., at 15:18–16:15.)  Hoffman, a longtime friend of the Vasquez-Ortiz family, works as a broker helping clients buy and sell aircrafts.  (*Id.* at 8:12–13, 11:18–13:24.)  He worked with Vasquez-Ortiz on numerous occasions to acquire and sell airplanes.  (*Id.* at 14:21–15:6, 23:11–12, 28:14–29:20.)  Hoffman explained that, because Vasquez-Ortiz was not a United States citizen, he could not register a United States aircraft.  (*Id.* at 19:3–9.)  Because of the advantages of a United States registered aircraft, Hoffman determined that it was "prudent" to establish a separate United States entity for the airplanes acquired by Vasquez-Ortiz.  (*Id.* at 18:24–19:9.)[2]  According to Hoffman, foreign nationals like Vasquez-Ortiz commonly set up a United States entity to own their aircrafts in order to register their planes with the United States.  (*Id.* 19:3–9.)[3]

During the course of Hoffman's relationship with Vasquez-Ortiz, Cite Aviation became the registered owner of several airplanes.  (*Id.* at 37:15–18.)  However, neither Hoffman nor Cite Aviation paid any money to acquire these airplanes; purchase prices were agreed to and paid by Vasquez-Ortiz.  (*Id.* at 19:24–20:3, 23:1–12, 55:17–56:6.)  Vasquez-Ortiz took care of various expenses associated with owning these airplanes, and appeared to control the use of the airplanes.  (*Id.* at 27:2–8, 38:16–23, 39:8–10.)  Hoffman was similarly uninvolved in obtaining insurance for the Lancair that ultimately crashed in May 2007.  (*See id.* at 68:15–69:16 (explaining that Hoffman's level of involvement in insuring the aircraft amounted only to

---

[1] Only Policy Number 510616, the policy covering liability, is at issue here. (Mot. for Summ. J., at 3; Doc. No. 7-2, English Translation of Liability Policy.)
[2] Hoffman testified at his deposition that there were some benefits to a United States registered aircraft as opposed to a Mexican registered aircraft, but appeared uncertain as to what exactly those benefits were. (Hoffman Dep., at 19:10–19.)
[3] Hoffman did not explain, however, why Cite Aviation was set up in his name and not in Vasquez-Ortiz's own name. (*See* Hoffman Dep. 19:3–9 (explaining only the desirability of registering an aircraft to a United States entity instead of to a foreign national).)

referring Vasquez-Ortiz to the company and broker that insured the other airplanes owned by Cite Aviation).)

In October 2006, Cite Aviation submitted an Insurance Application to Zurich. (Mot. for Summ. J., at 4; Doc. No. 43-1, English Translation of Insurance Application.)[4] The application requested $1,000,000 worth of coverage for "Legal Tort Liability," which the application form defined as "injury to third parties' property and/or body (combined single limit) not to include passengers, crew and damages caused by the product in case of exterminations," for the period of October 12, 2006 through October 12, 2007. (Doc. No. 43-1, English Translation of Insurance Application.) No amount was listed next to "Voluntary Payments" or "Medical Expenses" for either crew or passengers. (*Id.*) On October 9, 2006, Zurich sent a premium quote to Cite Aviation for $1,000,000 worth of coverage for "Tort Liability," defined in parentheses as "injury to third parties' property and/or body, not to include passengers, crew." (Doc. No. 43-2, English Translation of Quote.)

On October 13, 2006, Zurich issued Policy Number 510616 (hereinafter "Liability Policy") to Cite Aviation valid from October 12, 2006 through October 12, 2007. (Doc. No. 43-3, English Translation of Insurance Policy, at 1.)[5] The beginning of the Liability Policy provided general details, including the identity of the insured party, details about the insured property, premium amounts, and an overview of the policy conditions. (*Id.* at 1–3.) Under a section titled "Conditions," the Liability Policy provided certain coverage specifications. (*Id.* at 2.) Specifically, the Liability Policy indicated that it provided coverage for "Legal Civil Responsibility," defined as "[d]amage to third parties in its property and/or parties L.U.C.

---

[4] It is not clear who signed this application, as the signature is illegible. (Doc. No. 36-3, at 7, Copy of Original Spanish Insurance Application.) However, Cite Aviation is listed as the applicant. (Doc. No. 43-1, English Translation of Insurance Application.)

[5] This Court uses the pagination of the English translation of the policy, located below the bracketed words "English Translation," not the pagination in the bottom right corner.

[e]xcluding passengers and crew," in the amount of $1,000,000. (*Id*.) Further on in the Liability Policy, in a section labeled "General Conditions," the following description of covered risks is included:

> II. COVERED RISKS. Coverage appearing with an insured amount and specially set forth at caption sheet hereof, are covered in accordance with the following risk description . . .
> 3. Civil Legal Responsibility for damage to third parties and in their property (excluding passengers, crew and in the event of fumigators damage caused by the product). . . .
> 6. Voluntary Payments. It is understood and agreed to that this coverage covers corporal damage and life which may suffer passengers and crew who be aboard the aircraft, ascending and descending from same, and at petition of assigned insured shall make to the Insurance Company his payment application whenever the loss be stated within the next ninety (90) days after the accident date, notwithstanding legal responsibility of Insured.

(*Id.* at 7–8.)

On May 2, 2007, the Lancair covered by the Liability Policy crashed in Hidalgo, Texas. (Doc. No. 44-4, June 14, 2007 letter, at 1.) Vasquez-Ortiz, the pilot, and Georgina Grimaldo Azuara, the passenger, died in the crash. *Id.*

On May 1, 2009, the family and the Estate of Azuara brought suit against Cite Aviation and the Estate of Vasquez-Ortiz, among others, in Hidalgo County, Texas. (Doc. No. 35-3, April 6, 2010 letter, at 1; Doc. No. 35-3, Azuara's Second Amended Petition, at 1.) Hoffman delivered the Original Petition in the Azuara lawsuit to Zurich on July 8, 2009, requesting information as to how to proceed. (Doc. No. 35-3, April 6, 2010 letter, at 1.) Zurich responded the following day, indicating that there was no coverage for the Azuara lawsuit under the Liability Policy because the policy did not cover injuries to passengers. (*Id.*) Subsequently, on August 31, 2010, Zurich issued a more through explanation of its reasons for denying coverage. (Doc. No. 35-3, August 31, 2010 letter.)

4

On May 3, 2011, the Estate of Vasquez-Ortiz brought the instant lawsuit. (Doc. No. 1, Compl.) The Estate argues that Zurich violated the Liability Policy by failing to provide coverage for the Azuara lawsuit. Specifically, it charges Zurich with breach of contract, breach of duty of good faith and fair dealing, negligence, and a number of violations of the Texas Deceptive Trade Practices Act ("DTPA") and the Texas Insurance Code. (Am. Compl. ¶¶ 8–19.) It also seeks a declaratory judgment that the Liability Policy, specifically the "Voluntary Payments" portion, applies to the Azuara lawsuit. (*Id.* ¶ 20.)[6]

Zurich now moves for summary judgment, arguing that: (1) Plaintiff lacks standing to raise these claims; (2) the Liability Policy does not cover injuries to passengers and crew; (3) any claims for coverage are barred by the statute of limitations; (4) the Liability Policy includes a forum selection clause that mandates this dispute be litigated in Mexico; and (5) a Mexican tribunal already entered judgment in favor of Zurich on the issue of whether the Liability Policy covers injuries to passengers and crew.

## II.    LEGAL STANDARD

A motion for summary judgment requires the Court to determine whether the moving party is entitled to judgment as a matter of law based on the evidence thus far presented. Fed. R. Civ. P. 56(a). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Kee v. City of Rowlett,* 247 F.3d 206, 210 (5th Cir. 2001) (quotations omitted). "A fact is material if its resolution in favor of one party might affect the outcome of the lawsuit under

---

[6] Both Plaintiff's and Defendant's briefing focuses on Plaintiff's standing to bring this lawsuit generally and the breach of contract claim; the merits of the majority of these other claims are not addressed.

governing law." *Sossamon v. Lone Star State of Texas,* 560 F.3d 316, 326 (5th Cir. 2009) (quotations and footnote omitted).

"Facts and inferences reasonably drawn from those facts should be taken in the light most favorable to the non-moving party." *Nichols v. Enterasys Networks, Inc.*, 495 F.3d 185, 188 (5th Cir. 2007). The Court may not make credibility determinations or weigh the evidence. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). "The court should give credence to the evidence favoring the nonmovant as well as that 'evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses.'" *Id.* at 151. Hearsay, conclusory allegations, unsubstantiated assertions, and unsupported speculation are not competent summary judgment evidence. Fed. R. Civ. P. 56(e)(1); *see, e.g.*, *McIntosh v. Partridge*, 540 F.3d 315, 322 (5th Cir. 2008); *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996) *see also Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (noting that a nonmovant's burden is "not satisfied with 'some metaphysical doubt as to the material facts'") (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

### III. ANALYSIS

#### A. Standing

Defendant first argues that Plaintiff has no standing to bring an action based on the insurance contract between Cite Aviation and Zurich. Plaintiff argues that the Estate has standing to bring this suit because Vasquez-Ortiz was the alter ego of Cite Aviation, or, in the alternative, because Vasquez-Ortiz and his passengers were intended beneficiaries under the Liability Policy.

Standing is a jurisdictional issue that must be resolved as a threshold matter. *Am. S. Ins. Corp. v. Buckley*, 748 F. Supp. 2d 610, 618 (E.D. Tex. 2010) (citing *Xerox Corp. v. Genmoora Corp.*, 888 F.2d 345, 350 (5th Cir. 1989)).[7] "A plaintiff has standing to sue under an insurance policy if the plaintiff is a named insured or an additional named insured or if the plaintiff is an intended third-party beneficiary of the policy." *Williams v. Certain Underwriters at Lloyd's of London*, 398 Fed. App'x 44, 47 (5th Cir. 2010) (citations omitted); *see also Lasewicz v. Joyce Van Lines, Inc.*, 830 F. Supp. 2d 286, 291–92 (S.D. Tex. 2011) (granting summary judgment on breach of contract claim when no contract existed between named plaintiff and defendant).

Plaintiff does not dispute that Vasquez-Ortiz is not the named policyholder. Rather, the Estate argues that, because Vasquez-Ortiz effectively acted as Cite Aviation's alter ego, purchasing all of the assets Cite Aviation owned, paying for any necessary maintenance, and controlling the assets owned by Cite Aviation, he ought to be able to step in and sue on behalf of Cite Aviation. (Doc. No. 45, Resp. at 6–8.) Texas courts have recognized that a corporate form and an individual are mere alter egos "when there is such unity between corporation and individual that the separateness of the corporation has ceased and holding only the corporation liable would result in injustice." *Castleberry v. Branscum*, 721 S.W.2d 270, 271 (Tex. 1986)

---

[7] Although Defendant contends that the merits of this dispute are governed by Mexican law, it notes that standing is a procedural issue and therefore governed by Texas law. (Mot. for Summ. J., at 8 n.3.) "Questions of substantive law are controlled by the laws of the state where the cause of action arose, but matters of remedy and procedure are governed by the laws of the state where the action is sought to be maintained." *Hill v. Perel*, 923 S.W.2d 636, 639 (Tex. App.—Houston [1st Dist.] 1995, no writ); *see also Intevep, S.A. Research and Technological Support Establishment v. Sena*, 41 S.W.3d 391, 394 (Tex. App.—Dallas 2001, no pet.). This Court could find no Texas case specifically holding that standing is a procedural issue; however, Texas courts have consistently treated statutes of limitation as procedural. *See Intervep*, 41 S.W.3d at 394 (citing *Baker Hughes, Inc. v. Keco R. & D., Inc.*, 12 S.W.3d 1, 4 (Tex. 1999)); *Hollander v. Capon*, 853 S.W.2d 723, 727 (Tex.App.—Houston [1st Dist.] 1993, writ denied). This Court sees standing as an analogous issue; both standing and statutes of limitation address whether a given suit may be brought. Furthermore, neither party argues that Mexican law should govern this inquiry. Finally, while it may be the case that a United States court applying foreign law should consider whether that foreign law limits who may bring a cause of action, it would be odd indeed if foreign law could dictate when the minimal constitutional and prudential aspects of standing were satisfied. Accordingly, the Court need not determine the standing principles of Mexican law, if any. Instead, the Court assumes that questions of standing are governed by the law of this jurisdiction.

*superseded by statute* Tex. Bus. Org. Code § 21.223; *Mancorp, Inc. v. Culpepper*, 802 S.W.2d 226, 228 (Tex. 1990). In such instances, parties may bring claims directly against the corporation's owners, instead of proceeding against the corporation alone. *Id.* Indeed, courts have recognized that the purpose of the alter ego theory is to provide a means for creditors injured by a corporate form to impose liability upon the corporation's owners. *Matter of Sims*, 994 F.2d 210, 217 n.8 (5th Cir. 2002) ("Needless to say, the legal principles for disregarding a corporation's separate identity have been applied primarily in situations in which a creditor or other party seeks to use them as a sword, to impose liability upon the owners of a corporation."); *In re Lawler*, 53 B.R. 166, 169 (Bankr. N.D. Tex. 1985) (same). This Court has found no cases that support an "alter ego" concept of standing, and Plaintiff does not cite any.[8] The alter ego doctrine is a sword to be used against a corporation by its creditors, not a sword to be used by the corporation against those who assumed, in good faith, that they were dealing with a corporation and not an individual. This Court declines to extrapolate from this liability doctrine a novel theory of standing.

The Court is aware of, and sympathetic to, the Estate's predicament. It appears undisputed that Vasquez-Ortiz paid for all of the assets Cite Aviation owned, and took care of virtually all of the company's business, including obtaining the insurance policy that is the subject of this suit. (Hoffman Dep. at 19:24–20:3, 23:1–12, 27:2–8, 37:15–18, 38:16–23, 39:8–10, 55:17–56:6, 68:15–69:16.) He did all of this even though he possessed no ownership interest in Cite Aviation. (Hoffman Dep., at 15:18–16:15.) Now, only Hoffman, as the sole shareholder, may bring claims on behalf of Cite Aviation. Del. Code tit. 6 §§ 18-1001, 18-1002. Hoffman, however, appears to have a close relationship with members of the Vasquez-Ortiz family. (*See,*

---

[8] The sole case cited by Plaintiff, *Mancorp, Inc. v. Culpepper*, 802 S.W.2d 226 (Tex. 1990), applies the "alter ego" doctrine to allow a plaintiff to recover from an owner for the wrongdoings of the corporation.

*e.g.*, Doc. No. 45-4, First Set of Interrogs. Nos. 16, 20 (revealing that insurance proceeds from property damage claim were transferred to Rosa Maria Vasquez, Cite Aviation's legal fees are being paid by the Vasquez-Ortiz family, and all of the assets presently owned by Cite Aviation are collateralized by the Vasquez-Ortiz family).) The Estate has represented to the Court, at previous hearings, that these same members of the Vasquez-Ortiz family are trying to remove assets from the Estate, perhaps because they wish to keep it from the Estate's rightful heir, Vasquez-Ortiz's surviving son. Even in the face of these facts, however, the Court's hands are tied; the Court is simply not aware of any doctrine that would allow an individual who has no legal ownership of a corporate entity to sue on its behalf.[9]

Plaintiff next argues that, even if the alter ego theory does not grant the Estate standing, the Estate nonetheless has standing to bring suit against Zurich because Vasquez-Ortiz was an intended beneficiary. (Resp., at 8–9.) Defendant argues that no evidence exists showing that Cite Aviation and Zurich entered into their contract with the intent to benefit Vasquez-Ortiz. (Doc. No. 46, Reply, at 4–6.)[10]

"A third party may recover on a contract made between other parties only if the parties intended to secure some benefit to that third party, and only if the contracting parties entered into

---

[9] This predicament could have been avoided had Vasquez-Ortiz maintained legal ownership of Cite Aviation. Although Hoffman explained the desirability of registering an aircraft to a United States entity, Hoffman did not explain why Cite Aviation was set up in his name and not in Vasquez-Ortiz's own name. (*See* Hoffman Dep. 19:3–9.) This Court does not see any reason why Vasquez-Ortiz could not have registed Cite Aviation in his own name. *See* Limited Liability Company Act, Del. Code tit. 6 §§ 18-101, *et seq.*

[10] Defendant also appears to contend that a third-party beneficiary's standing to bring a claim should be determined under Mexican law. (*See* Reply, at 4 n.5 ("Plaintiff's Opposition raised [the third-party beneficiary] argument under Texas law despite having failed to oppose Zurich's Rule 44.1 motion on the applicability of Mexican law in this case. Without a waiver of its argument that Mexican law applies, Zurich replies to Plaintiff's arguments under Texas law in the event this Court decides Texas law applies.")) As noted *supra*, this Court understands standing questions to be procedural. However, the Court also recognizes that conferring standing to a third party, upon whom a different jurisdiction may decide not to grant standing, is more substative than determining whether this Court's minimum standing requirements are met. Fortunately, the Court need not decide whether if a third-party beneficiary may raise a claim is a procedural or substantive issue. Neither Plaintiff nor Defendant provides any briefing on whether a third-party may sue for breach of contract under Mexican law. Accordingly, the Court merely decides whether, assuming Texas law applies, Plaintiff may proceed against Zurich as a third-party beneficiary.

the contract directly for the third party's benefit." *MCI Telecomm. Corp v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 651 (1999); *Union Pac. R.R. Co. V. Novus Int'l, Inc.*, 113 S.W.3d 418, 421 (Tex. App.—Houston [1st Dist.] 2003, no writ). "A court will not create a third-party beneficiary contract by implication. The intention to contract or confer a direct benefit to a third party must be clearly and fully spelled out or enforcement by the third party must be denied." *MCI*, 995 S.W.2d at 651 (citation omitted). Texas courts have recognized that "[a] party injured by the insured is a third-party beneficiary of a liability insurance policy"; however, the injured third-party "cannot enforce the policy directly against the insurer until it has been established, by final judgment or agreement, that the insured has a legal obligation to pay damages to the injured party." *Farmers Ins. Exch. v. Rodriguez*, 366 S.W.3d 216, 223 (Tex. App.—Houston [14th Dist.] 2012, no writ); *State Farm Cnty. Mut. Ins. Co. of Tex. v. Ollis,* 768 S.W.2d 722, 723 (Tex.1989) (per curiam); *Standard Fire Ins. Co. v. Am. Econ. Ins. Co.*, 894 F. Supp. 1023, 1027 (N.D. Tex. 1995).

Plaintiff's argument that he is a third-party beneficiary is premised on his interpretation of the contract as covering injuries to passengers and crew. (Resp., at 8.) The Court need not decide whether Plaintiff is correct on this point. Even assuming that the contract does cover injuries to passengers and crew, it is well-established that a party injured by the insured does not have a right of action to enforce the contract against the insurer until a final judgment has been obtained against the insured. *Rodriguez*, 366 S.W.3d at 223; *Ollis,* 768 S.W.2d at 723; *Standard Fire*, 894 F. Supp. at 1027. The Estate has not indicated that Vasquez-Ortiz has obtained a final judgment against Cite Aviation establishing that Cite Aviation has a duty to pay him damages. Furthermore, the contract contains no evidence that Cite Aviation and Zurich contracted with the intent to confer a benefit on Vasquez-Ortiz specifically or crewmembers generally. *See Union*

*Pac.*, 113 S.W.3d 422–23 (rejecting claim by customer of one of the contracting parties because there was no indication in the contract that the parties contracted with the intent to confer a benefit on their customers).

Because Vasquez-Ortiz is neither the insured nor a third-party beneficiary to the contract at issue, the Estate lacks standing to bring claims arising out of Zurich's alleged failure to fulfill obligations it owed to the insured party. Furthermore, to the extent that a third party may sometimes assert claims under the Texas Insurance Code or the DTPA, such claims do not survive the claimant's death. *See Mendoza v. Am. Nat. Ins. Co.*, 932 S.W.2d 604, 609 (Tex. App.—San Antonio 1996, no writ); *First Nat. Bank of Kerrville v. Hackworth*, 673 S.W.2d 218, 221 (Tex. App.—San Antonio 1984, no writ). Since the Estate lacks standing to bring any of the claims asserted in the Amended Complaint, the Court need not reach the merits of the claims or assess the remainder of Zurich's arguments. Zurich's Motion for Summary Judgment (Doc. No. 35) is **GRANTED**.

### III. CONCLUSION

Zurich's Motion for Summary Judgment (Doc. No. 35) is **GRANTED**. Because the Court reaches its conclusion based on standing, Zurich's Motion for Determination of Law Pursuant to Rule 44.1 (Doc. No. 36) is **TERMINATED AS MOOT**. The case is **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED**.

**SIGNED** at Houston, Texas, on this the 8th day of January, 2013.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE